UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI MERRYFLORIAN,<br><br>                  Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,[1]<br>Commissioner of Social Security,<br><br>                  Defendant. | Civil No.   12-cv-2493-IEG (DHB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 14, 15]** |

## I. INTRODUCTION

On October 15, 2012, Plaintiff Lori Merryflorian filed a complaint pursuant to section 405(g) of the Social Security Act requesting judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding the denial of Plaintiff's claim for disability benefits. (ECF No. 1.) On January 28, 2013, Defendant filed an answer (ECF No. 11) and the administrative record ("A.R."). (ECF No. 12.) On April 2, 2013, Plaintiff filed a motion for summary judgment, seeking reversal of Defendant's denial and an award of benefits or, alternatively, remand for further proceedings. (ECF No. 14.) Plaintiff contends the Administrative Law Judge ("ALJ") committed reversible error at step five of the sequential analysis by relying on vocational testimony that is incomplete and contradicted

---

[1] The Court substitutes Carolyn W. Colvin in place of Michael J. Astrue as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

by published vocational data. (ECF No. 14-1 at 5:3-7.)² On April 29, 2013, Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment. (ECF No. 15.)³ On May 13, 2013, Plaintiff filed an opposition to Defendant's cross-motion and reply to Defendant's opposition. (ECF No. 17.) On June 12, 2013, the Honorable Irma E. Gonzalez referred the parties' cross-motions for summary judgment to the undersigned Magistrate Judge for a Report and Recommendation. (ECF No. 19.)

For the reasons set forth herein, after careful consideration of the administrative record and the applicable law, the Court hereby **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's cross-motion for summary judgment be **GRANTED**.

## II. PROCEDURAL BACKGROUND

On March 9, 2009, Plaintiff protectively filed an application for Supplemental Security Income. (A.R. 143-146.) Plaintiff alleged a disability beginning on January 1, 2003. (A.R. 143-146.) Plaintiff's application asserted that she was unable to work due to reflex sympathetic dystrophy and TMJ disease. (A.R. 169.) After a July 13, 2009 denial at the initial determination (A.R. 78-81) and a January 4, 2010 denial on reconsideration (A.R. 84-88), Plaintiff filed a timely request for hearing before an ALJ. (A.R. 90.) On March 7, 2011, Plaintiff testified at an administrative hearing before ALJ James Carletti. (A.R. 38-71.) Plaintiff was represented at the hearing by an attorney, Mr. Procida. (A.R. 38, 40.) On April 13, 2009, the ALJ denied Plaintiff benefits after finding that Plaintiff was not disabled, as defined by the Social Security Act. (A.R. 20-33.) The Commissioner's decision became final when the Appeals Council adopted the ALJ's

---

² Page numbers for docketed materials cited in this Report and Recommendation generally refer to those imprinted by the Court's electronic case filing system. One exception is the Court's citation to the specific page numbers of the administrative record.

³ Defendant actually filed its cross-motion and opposition twice on April 29, 2013. (*See* ECF Nos. 15, 16.) Both documents appear identical. Accordingly, the Court will disregard the second filing (ECF No. 16) and make reference only to the initial filing (ECF No. 15) in this Report and Recommendation.

findings on August 17, 2012. (A.R. 1-3.) Thereafter, Plaintiff filed the instant action on October 15, 2012. (ECF No. 1.)

## III. LEGAL STANDARDS

### A. Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed or any other substantially gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), (2)(A). A claimant must meet both requirements to be classified as "disabled." *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *See Tackett*, 180 F.3d at 1098 & n.3 (citing 20 C.F.R. § 404.1512(d)).

**B.      Scope of Review**

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell*, 161 F.3d at 601).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). It "is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457 (citing *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993)). In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Frost v. Barnhart*, 314 F.3d 359, 366-67 (9th Cir. 2002) (quoting *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.") (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). However, even if the

Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (citing *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

Section 405(g) permits the Court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. *Id.*

## IV. DISCUSSION

### A. The ALJ's Findings

After consideration of all the evidence, the ALJ concluded Plaintiff has not been under a disability, as defined by the Social Security Act. (A.R. 33.) Specifically, at step one of the sequential evaluation process, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since February 20, 2009, the date of Plaintiff's application. (A.R. 25.) At step two, the ALJ concluded that Plaintiff has the following severe impairments: reflex sympathetic dystrophy; temporal mandibular joint syndrome; major depressive disorder; and anxiety disorder, not otherwise specified. (A.R. 25.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or exceed the impairments contained in the Listing of Impairments. (A.R. 27.) Prior to considering step four, the ALJ determined that Plaintiff has the residual functional capacity to perform sedentary work with limitations to simple repetitive tasks in a non-public setting with minimal contact with co-workers and supervisors. (A.R. 28.) At step four, the ALJ found that Plaintiff does not have any past relevant work. (A.R. 32.) Finally, at step five, the ALJ concluded that considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (A.R. 32.) Specifically, the ALJ found Plaintiff is capable of performing the work of a tube operator, eyeglass frame polisher and cutter/paster. (A.R. 33.) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (A.R. 33.)

## B. Step Five of the Sequential Analysis

Plaintiff contends the ALJ erred at step five of the sequential analysis by relying on vocational testimony that is incomplete and contradicted by published vocational data. (ECF No. 14-1 at 5:3-7.)

At step five, the Commissioner bears the burden of proof to "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)); *see also Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1282c(a)(3)(B).

> There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

*Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). "A failure to identify a significant number of jobs is legal error warranting remand." *McCaleb v. Colvin*, No. EDCV 12-01428-JEM, 2013 U.S. Dist. LEXIS 53757, at *14 (C.D. Cal. Apr. 12, 2013) (citing *Beltran v. Astrue*, 676 F.3d 1203, 1206-07 (9th Cir. 2012)).

In this case, vocational expert Nelly Katsell, M.S., testified at Plaintiff's hearing before the ALJ. (A.R. 23, 66-69.) The vocational expert testified that a person with Plaintiff's residual functional capacity could perform jobs such as tube operator (1,500 jobs in the San Diego region and 200,000 in the nation), eyeglass frame polisher (1,700 jobs in the San Diego region and 300,000 in the nation) and cutter/paster (2,800 jobs in the San Diego region and 750,000 in the nation). (A.R. 67-68.) The ALJ ultimately adopted the vocational expert's testimony in finding "that, considering the claimant's age,

education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (A.R. 33.)

Plaintiff contends the vocational expert "provided erroneous data that the ALJ relied on." (ECF No. 14-1 at 13:13-14.) In support of this argument, Plaintiff refers to vocational data published by two separate sources, the *Specific Occupation Employment Unskilled Quarterly* ("SOEUQ") and *Job Browser Pro*, which, according to Plaintiff, demonstrate "that the jobs do not exist in the numbers suggested by the vocational expert and that the vocational expert deviates wildly from the published data." (*Id.* at 12:14-16.)[4] Plaintiff concludes that this new information, which was also submitted to the Appeals Council, "can transform what was substantial evidence into insubstantial evidence." (*Id.* at 15:3-4.)

Plaintiff's argument, however, has been recently and uniformly rejected by numerous courts. *See, e.g.*, *Solano v. Colvin*, No. SA CV 12-01047 RZ, 2013 U.S. Dist. LEXIS 100080, at *3 (C.D. Cal. July 16, 2013) (rejecting plaintiff's argument "that the evidence from *Job Browser Pro* that she submitted to the Appeals Council undermined the testimony of the [vocational] expert, such that the Court should reverse the Commissioner's decision."); *Peck v. Colvin*, No. CV 12-00577 AGR, 2013 U.S. Dist. LEXIS 86444, at *10 n.3 (C.D. Cal. June 19, 2013) (recognizing that although a vocational expert may rely on SOEUQ and *Job Browser Pro* data, that data has been challenged); *Villareal v. Colvin*, No. EDCV 12-01640-JEM, 2013 U.S. Dist. LEXIS

---

[4] Plaintiff represents the data from the SOEUQ demonstrates there are 40 regional jobs, 525 California jobs and 3,750 national jobs as a tube operator; 3 regional jobs, 17 California jobs and 353 national jobs as an eyeglass frame polisher; and 43 regional jobs, 394 California jobs and 2,310 national jobs as a cutter/paster. (ECF No. 14-1 at 8:5-15.) Plaintiff also represents the data from *Job Browser Pro* demonstrates there are 9 regional jobs, 119 California jobs and 886 national jobs as a tube operator; 0 regional jobs, 5 California jobs and 42 national jobs as an eyeglass frame polisher; and 0 regional jobs, 3 California jobs and 22 national jobs as a cutter/paster. (*Id.* at 9:17-24.) Defendant contends "the number of jobs listed in Plaintiff's brief do not comport with the number of jobs found in her exhibit." (ECF No. 15-1 at 5:1-3.) However, because Plaintiff's argument fails, as discussed below, the Court need not resolve the parties' dispute over the accuracy of the job figures proffered by Plaintiff.

85811, at *13-16 (C.D. Cal. June 18, 2013) (rejecting *Job Browser Pro* data submitted to Appeals Council to contradict testimony of vocational expert); *Valenzuela v. Colvin*, No. CV 12-0754-MAN, 2013 U.S. Dist. LEXIS 73439, at *15 & n.4 (C.D. Cal. May 23, 2013) (citing numerous court decision "uphold[ing] the Appeals Council decision notwithstanding the conflict between the vocational expert's testimony and the vocational evidence submitted by plaintiff to the Appeals Council."); *Hunt v. Colvin*, No. EDCV 12-1117 AN, 2013 U.S. Dist. LEXIS 730070, at *8 (C.D. Cal. May 13, 2013) ("That the new *Job Browser Pro* data may differ from the VE's testimony is not enough to warrant remand."); *Engrave v. Colvin*, No. EDCV 12-2021 JC, 2013 U.S. Dist. LEXIS 55146, at *10-13(C.D. Cal. Apr. 17, 2013) (rejecting plaintiff's argument that new vocational evidence from *Job Browser Pro* justifies remand or reversal); *Gonzalez v. Colvin*, No. CV 12-3501-PJW, 2013 U.S. Dist. LEXIS 53777, at *4-5 (C.D. Cal. Apr. 15, 2013) ("The fact that jobs numbers in the [*Job Browser Pro* and SOEUQ] reports Plaintiff submitted to the Appeals Council differ from the vocational expert's numbers does not mean that the Agency's decision was infirm."); *McCaleb*, 2013 U.S. Dist. LEXIS 53757, at *13-17 (rejecting plaintiff's argument that remand is required where "the VE did not identify the source of her jobs data or describe her methodology, and her job numbers vary significantly from the Job Browser Pro data."); *Newsome v. Colvin*, No. EDCV 12-0371 AN, 2013 U.S. Dist. LEXIS 38779, at *4-7 (C.D. Cal. Mar. 3, 2013) (rejecting plaintiff's argument that *Job Browser Pro* data submitted to the Appeals Council demonstrates the vocational expert provided erroneous data to the ALJ); *Gardner v. Colvin*, No. CV 12-07275, 2013 U.S. Dist. LEXIS 28907, at *8 (C.D. Cal. Mar. 1, 2013) ("Plaintiff's argument that the VE's testimony does not constitute substantial evidence in light of conflicting evidence from the SOEUQ and *Job Browser Pro* is without merit."); *Bradley v. Astrue*, No. CV 12-3361-E, 2012 U.S. Dist. LEXIS 167522, at *20 (C.D. Cal. Nov. 26, 2012) (upholding denial of benefits "notwithstanding the conflict between the vocational expert's testimony and the vocational evidence submitted by Plaintiff to the Appeals

Council.").[5]  For the reasons set forth below, the Court agrees with the conclusions of these courts.

First, the ALJ was entitled to rely on the vocational expert's testimony regarding the number of available jobs in the economy. In *Bayliss*, the Ninth Circuit recognized that "[a]n ALJ may take administrative notice of any reliable job information, including information provided by a VE." 427 F.3d at 1218 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Moreover, a vocational expert's "recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Id.*; *see also Villareal*, 2013 U.S. Dist. LEXIS 85811, at *14 (citing *Bayliss* for conclusion that a vocational expert's "expertise is sufficient foundation and no further foundation is necessary"); *McCaleb*, 2013 U.S. Dist. LEXIS 53757, at *15 ("Plaintiff cites to no case in the Ninth Circuit requiring foundation testimony for a VE's job estimates. *Bayliss* is directly to the contrary and controlling here.").

Second, Plaintiff's introduction of data from *Job Browser Pro* and the SOEUQ does not undermine the reliability of the vocational expert's testimony for multiple reasons. As the court in *Valenzuela* recognized:

> plaintiff's lay assessment of the raw vocational data derived from Job Browser Pro does not undermine the reliability of the vocational expert's opinion, which the ALJ adopted at step five. As an initial matter, the data presented by plaintiff was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context. In fact, Job Browser Pro is not included in the list of published sources recognized as authoritative by the Social Security regulations. *See* 20 C.F.R. § 416.966(d).[6] Further, while plaintiff identifies several decisions in which courts have acknowledged that a vocational expert's testimony that relies on Job Browser Pro data can constitute substantial evidence, none hold that a vocational expert must rely on it or that this source controls when it conflicts with the vocational expert's testimony.

2013 U.S. Dist. LEXIS 73439, at *11; *see also Solano*, 2013 U.S. Dist. LEXIS 100080, at *3-4 (finding the Commissioner was "certainly not required to explain why an

---

[5] The Court notes that the vast majority of cases in which Plaintiff's argument has been previously rejected are cases involving Plaintiff's counsel or his law firm.

[6] Neither the SOEUQ nor *Job Browser Pro* are included in the list of published sources recognized by Social Security regulations. *See* 20 C.F.R. § 404.1566(e).

unauthenticated page [containing *Job Browser Pro* data] printed from a computer screen did not trump the testimony of an expert witness."); *Villareal*, 2013 U.S. Dist. LEXIS 85811, at *15 ("There is no reason to believe that the Job Browser Pro data is the only source of job data or superior to others, and thus such data is not conclusive. . . . The Job Browser Pro data . . . cannot override the Appeals Council's authority to rely on the VE's experience and expertise."); *Hunt*, 2013 U.S. Dist. LEXIS 73070, at *8 ("Plaintiff has not established that the *Job Browser Pro* data is the only source of job data or superior to others. Nor does Plaintiff support her interpretation of the raw numbers included in the *Job Browser Pro* data with any analysis or explanation from a VE."); *Engrave*, 2013 U.S. LEXIS 55146, at *11 ("Plaintiff's currently asserted lay assessment of raw vocational data derived from the Job Browser Pro software does not, as plaintiff argues, undermine the reliability of the vocational expert's opinion which the ALJ adopted at step five."). Similarly, here, Plaintiff's argument suffers from the same flaws.[7]

Third, even assuming the accuracy and reliability of the data presented by Plaintiff, the ALJ's decision must nevertheless be upheld. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *see also Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001) (recognizing that the ALJ is responsible for resolving conflicts and ambiguities); *Valenzuela*, 2013 U.S. Dist. LEXIS 73439, at *13 ("[A]ssuming *arguendo* that the data from Job Browser Pro constitutes substantial evidence, the data, at best, would support an alternative finding regarding the number of job [sic] available for plaintiff in the economy.").

Fourth, Plaintiff's argument that "[t]he vocational [expert] did not describe the methodology on how the numbers of jobs were calculated and the ALJ did not ask" (ECF No. 14-1 at 8:2-3) is unavailing. Initially, as noted above, "[c]ontrary to [P]laintiff's contentions, neither the ALJ nor the vocational expert was required to identify the

---

[7] An additional problem with Plaintiff's argument is that the two sources she relies on, the SOEUQ and *Job Browser Pro*, contain significantly different estimates of available jobs, thus calling into question their accuracy and reliability. *See infra* note 4.

methodology used to determine the jobs [P]laintiff can perform. Rather, the vocational expert's expertise alone was a sufficient foundation." *Valenzuela*, 2013 U.S. Dist. LEXIS 73439, at *10-11. Moreover, despite having the opportunity to do so at the hearing before the ALJ, Plaintiff's counsel failed to question the vocational expert regarding the methodology used to determine the number of jobs available. As stated in *Valenzuela*:

> plaintiff's counsel utterly failed to challenge the vocational expert's job numbers, inquire about the methodology used to derive those numbers, or present competent evidence regarding other jobs data at the administrative hearing. Rather, plaintiff waited until after the ALJ's adverse decision to submit alternative jobs data to the Appeals Council. . . . Further, plaintiff's counsel has not explained why he did not proffer the Jobs [sic] Browser Pro data, which presumably was available at the time of the hearing, to the ALJ rather than waiting to submit it to the Appeals Counsel, which, in effect, invited the alleged error now at issue.

*Id.* at *13-14; *see also Villareal*, 2013 U.S. Dist. LEXIS 85811, at *14 ("Plaintiff cannot complain that the VE's methodology is undisclosed when his counsel had the opportunity to cross-examine [the VE] on that issue but failed to do so."); *Hunt*, 2013 U.S. Dist. LEXIS 73070, at *8 ("Plaintiff had ample opportunity to cross-examine the VE on his methodology for determining the number of available jobs, but declined to do so."); *McCaleb*, 2013 U.S. Dist. LEXIS 53757, at *16 (same).[8]

In sum, the ALJ's step five determination is supported by substantial evidence because the ALJ properly relied on the vocational expert's testimony that a hypothetical person with the same residual functional capacity as Plaintiff could perform work existing in substantial numbers in the national economy.

## V. CONCLUSION

After a thorough review of the record in this matter and based on the foregoing analysis, this Court **RECOMMENDS** Plaintiff's motion for summary judgment be

---

[8] This Court recognizes that, as a practical matter, it is unlikely that a claimant's attorney would be able to introduce published vocational data, such as that contained in *Job Browser Pro*, during the hearing before the ALJ because the attorney will have no way of knowing in advance of the hearing which jobs the vocational expert will testify the claimant is capable of performing. However, that information could conceivably be submitted to the ALJ following the hearing but before the ALJ issues his or her decision. *See* 20 C.F.R. § 404.944 (authorizing the ALJ to "reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence.").

1  **DENIED** and Defendant's cross-motion for summary judgment be **GRANTED**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d).

IT IS HEREBY ORDERED that **no later than August 29, 2013**, any party may file and serve written objections with the Court and serve a copy on all parties. The documents should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no later than ten days** after being served with the objections. The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: August 15, 2013

DAVID H. BARTICK
United States Magistrate Judge